Delon **PICKENS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0106–CR–278.

Court of Appeals of Indiana.

March 8, 2002.

**296**

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Delon Pickens appeals his conviction for murder, a felony.[1] He raises two issues, which we restate as:

1. Whether the trial court abused its discretion by admitting evidence that Pickens robbed and shot another person two weeks before the crime charged herein occurred; and

[1] Ind.Code § 35–42–1–1.

2. Whether the trial court abused its discretion by admitting evidence that police officers observed an assault rifle in Pickens's residence two years before the crime charged herein occurred.

We affirm.

The facts most favorable to the conviction follow. On December 7, 1998, Adderse Bradley was riding in Pickens's car when Pickens drove the car into an alley. Pickens pointed a gun at Bradley and took Bradley's shoes, coat, watch, and money. When Pickens let Bradley out of the car, Bradley shot at Pickens. Pickens then shot at Bradley, hitting him in the thigh.

On December 13, 1998, Bradley was sitting on a porch at Deborah Wells's house on North Kenwood Avenue in Indianapolis, Indiana. Bradley and his mother lived at Wells's house. Pickens stopped his car at the curb and asked Bradley if their dispute was over. Bradley responded that it was "cool" but he wanted his "stuff back." Transcript at 58.

On the evening of December 23, 1998, Wells had several guests at her home, including Bradley and Keith Whitfield. Whitfield was Wells's nephew and also lived with Wells occasionally. Whitfield left the house while wearing Bradley's coat. A few minutes later, shots were fired at the Wells residence. Although the police were called, Whitfield's body was not discovered until the next morning. His body was found on a walkway between Wells's residence and the neighboring house. The police found shell casings for an assault rifle and a shotgun at the scene.

In July 1999, Donald Carter told police that he had information regarding the shooting of Whitfield. Carter told police that in January 1999, Pickens informed him that Pickens and another man shot Whitfield but they were trying to kill Bradley. Carter also told police that Pick-

ens had shown Carter a 12 gauge pump shotgun and an AK–47 assault rifle at Pickens's house. Julius Johnson, Pickens's cellmate, also informed police that Pickens had confessed to shooting Whitfield.

Pickens was charged with murder, a felony. Following a jury trial, Pickens was convicted and sentenced to sixty-five years in the Indiana Department of Correction.

 Pickens argues that the trial court abused its discretion by admitting certain evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Timberlake v. State*, 690 N.E.2d 243, 255 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.*

 However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if "the error is inconsistent with substantial justice" or if "a substantial right of the party is affected." *Timberlake*, 690 N.E.2d at 255. Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Stephenson v. State*, 742 N.E.2d 463, 481 (Ind.2001), *cert. denied, —— U.S. ——, 122 S.Ct. 905, 151 L.Ed.2d 874 (2002).*

I.

The first issue is whether the trial court abused its discretion by admitting evidence that Pickens robbed and shot Bradley two weeks before Whitfield was shot. Despite

Pickens's objection, the trial court permitted the testimony under Ind. Evidence Rule 404(b) as evidence of Pickens's motive. However, the trial court instructed the jury to consider the testimony only on the issue of motive and not "to show that [Pickens] acted in a similar fashion on December 23rd." Transcript at 20.

Ind. Evidence Rule 404(b) provides, in part, that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."

The rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." *Hicks v. State*, 690 N.E.2d 215, 218–219 (Ind.1997). In determining whether to admit evidence under Ind. Evidence Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind. Evidence Rule 403.[2] *Id.* at 221. To determine whether the trial court abused its discretion, we employ the same test. *See, e.g., id.* at 221–223.

Consequently, we must first determine whether Pickens's incident with Bradley is relevant to a matter at issue other than Pickens's propensity to murder Whitfield. The State's theory of the case was that Pickens intended to kill Bradley but mistakenly killed Whitfield because Whitfield was wearing Bradley's coat on the night in question. The trial court admitted the evidence at issue to show Pickens's motive. Pickens contends that evidence of the relationship between Bradley and Pickens was not relevant to his motive for shooting Whitfield. We disagree.

The evidence of Pickens's dispute with Bradley was relevant to show Pickens's motive to shoot Bradley. The fact that Pickens mistakenly shot Whitfield instead of Bradley does not eliminate the motive for the shooting. Thus, the evidence was relevant to a matter at issue other than Pickens's propensity to commit the murder. *See, e.g., Swanson v. State*, 666 N.E.2d 397, 398 (Ind.1996), *reh'g denied.*

We must next determine whether the trial court abused its discretion in balancing the probative value of the evidence of Pickens robbing and shooting Bradley against its prejudicial effect. Pickens argues that the evidence is highly prejudicial because it shows him "to be a person capable of shooting someone else." Appellant's Brief at 6. Moreover, Pickens argues that the danger of unfair prejudice is high because of the violent nature of the incident.

Our supreme court previously considered whether testimony that a defendant had been accused of child molesting by the victim was unfairly prejudicial when the defendant had been charged with murdering that victim. *Taylor v. State*, 659 N.E.2d 535, 543 (Ind.1995). Our supreme court held that:

The State introduced the information to demonstrate Taylor's motive for killing Tawana. Its theory was that Taylor

---

**2.** Ind. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

became so angry at Tawana and Phyllis for accusing him of child molesting that he lashed out at them. While evidence of past sexual misconduct with children may be highly prejudicial, its probative value in this case was not substantially outweighed.

*Id.* (footnote omitted). Similarly, in this case, while the evidence that Pickens robbed and shot Bradley may be prejudicial, its probative value regarding Pickens's motive to shoot Whitfield was not outweighed. Moreover, the trial court specifically instructed the jury to consider the testimony only on the issue of motive. The trial court did not abuse its discretion by admitting the evidence that Pickens robbed and shot Bradley. *See, e.g., Ortiz v. State,* 716 N.E.2d 345, 350 (Ind.1999).

## II.

The next issue is whether the trial court abused its discretion by admitting evidence that police officers had seen an assault rifle in Pickens's residence two years before the crime charged herein occurred. Over Pickens's objection, the State presented evidence that police searched a residence where Pickens lived with his parents pursuant to a search warrant in 1996. During the search, the police officers saw an assault rifle in the basement of the home. However, because the rifle was not the object of the search and possession of the weapon was not illegal, the police officers left the assault rifle in the residence.

At trial, Pickens argued that this evidence was inadmissible under Ind. Evidence Rule 404(b) as a "prior bad act" and was also irrelevant. The State argued that the evidence was not a "bad act" under Ind. Evidence Rule 404(b). The trial court found that the evidence was relevant because shell casings from an assault rifle were found at the scene of Whitfield's murder and admitted the evidence.

On appeal, Pickens argues that the evidence is inadmissible under Ind. Evidence Rule 404(b). However, it is "by no means clear that weapons possession, evidence of gun sales, and the like, are necessarily prior 'bad acts' for 404(b) purposes." *Williams v. State,* 690 N.E.2d 162, 174 (Ind.1997). Nevertheless, even assuming arguendo that possession of the assault weapon is a "bad act" for purposes of Ind. Evidence Rule 404(b), the trial court did not abuse its discretion.

As discussed in Part I, in determining the admissibility of evidence under Ind. Evidence Rule 404(b), a trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect. *Hicks,* 690 N.E.2d at 221. Evidence that a defendant had access to a weapon of the type used in a crime is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Thompson v. State,* 728 N.E.2d 155, 160 (Ind.2000), *reh'g denied.* Thus, the evidence regarding the assault rifle was relevant to show Pickens's access to a weapon of the type used in the murder. *See id.*

Pickens argues that probative value of the evidence is low due to the length of time between the 1996 search when police officers saw the assault rifle and the 1998 murder of Whitfield. Our supreme court has noted that:

[s]ome proffered evidence may be irrelevant because it is too remote. For example, the fact that an adult defendant threatened the victim when both were children does not tell us much about their relationship today. On the other hand, an event occurring in the past can be critical. If the defendant stole the

murder weapon twenty years ago and its presence is unaccounted for in the interim, the relevance of the gun theft to show access to the weapon is not obviated by the passing of time or by the dissimilarity between theft and murder. In short, admissibility hinges on relevance, not a litmus test based on an isolated factor—remoteness, similarity, or anything else—that may bear on relevance.

*Hicks*, 690 N.E.2d at 220. Despite the length of time between the 1996 search and the 1998 murder of Whitfield, the police officer's testimony regarding his observation of the assault rifle in 1996 has high probative value to demonstrate that Pickens had access to the type of weapon used in Whitfield's murder. *See, e.g., id.* (holding that incidents of violence between the defendant and victim in 1993 and 1994 were relevant to show motive of 1994 murder, but prejudicial impact of a 1991 incident of violence outweighed its probative value).

In balancing the prejudicial value against the probative value, Pickens argues that evidence of the assault rifle was highly prejudicial because it showed Pickens "to be someone who had an affinity for assault rifles and so must have been the person who used one to shoot [Whitfield]." Appellant's Brief at 9. However, in *Thompson*, evidence was presented that a defendant attempted to sell a Derringer handgun a few days before a Derringer handgun was used in a murder. Our supreme court held that the defendant "point[ed] to no danger of unfair prejudice, other than a generalized concern that selling a weapon may be viewed unfavorably." *Thompson*, 728 N.E.2d at 160. In that case, the possibility of unfair prejudice was "clearly outweighed by the probative value of testimony that [the defendant] had access to a weapon of the type used in the murder." *Id.*

Similarly, Pickens only points to a generalized concern that possessing an assault weapon would be viewed unfavorably. The possibility of unfair prejudice in this case is outweighed by the probative value of the evidence that Pickens had access to the type of weapon used in Whitfield's murder. *See, e.g., id.* Thus, even assuming that the Ind. Evidence Rule 404(b) analysis is applicable, the trial court did not abuse its discretion by admitting the police officer's testimony that he observed an assault rifle in Pickens's residence in 1996. *See, e.g., id.*

Moreover, any error in admitting the evidence concerning the assault rifle observed during the 1996 search would be harmless. In addition to the police officer's testimony regarding the assault rifle seen in the 1996 search, Carter testified that Pickens showed him an assault rifle at Pickens's home in January 1999, shortly after Whitfield's murder. This testimony also demonstrates that Pickens had access to the type of weapon used in Whitfield's murder. Thus, the police officer's testimony regarding the assault rifle seen in 1996 was cumulative of Carter's testimony that Pickens possessed an assault rifle in January 1999. Any error in the admission of the police officer's testimony regarding the assault rifle seen in 1996 was harmless. *See, e.g., Hicks*, 690 N.E.2d at 223.

For the foregoing reasons, we affirm Pickens's conviction for murder.

Affirmed.

DARDEN, J., and BAILEY, J. concur.