Andrew ROGERS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A04–0806–CR–315.

Court of Appeals of Indiana.

Dec. 12, 2008.

Rehearing Denied Feb. 2, 2009.

Karen M. Heard, Vanderburgh County Public Defender's Office, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Andrew Rogers ("Rogers") was convicted in Vanderburgh Circuit Court of murder. Rogers appeals and presents five issues, which we restate as:

I. Whether the trial court erred in the admission of evidence regarding Rogers's prior possession of a steak knife;

II. Whether the trial court erred in admitting into evidence photographs taken during the autopsy of the victim;

III. Whether the trial court abused its discretion by refusing to give a tendered instruction regarding voluntary intoxication;

IV. Whether the trial court erred in sentencing Rogers; and

V. Whether Rogers was denied the effective assistance of trial counsel.

We affirm.

### Facts and Procedural History

On the evening of August 11, 2007, several people were attending a party at the apartment of Alex Hobbs ("Hobbs") in Evansville. Among those attending the party were Rogers and the victim in this case, Thomas Walls ("Walls"). At some point during the evening, Rogers was seen in the kitchen taking a wooden-handled steak knife from the dishwasher. At approximately midnight, fifteen-year-old D.W. and twelve-year-old H.C. came to Hobbs's apartment to play a video game. While they played, Rogers sat in a nearby chair with his feet on a footstool, apparently intoxicated and asleep.

After the boys had played the game for approximately one hour, Walls came into the room and wanted to play too. He moved Rogers's feet so that he could sit on the footstool. This awoke Rogers, who became angry and loudly cursed at Walls, accusing him of trying to steal his shoes. Rogers told Walls that if he tried to steal his shoes again, he would stab Walls. Rogers sat back down, but Walls said something that caused him to get back up and again angrily yell at Walls that he should stop trying to steal his shoes. Walls told Rogers that he was not trying to start a fight. Rogers repeatedly stated, "[T]ell me I won't stab this guy," to which Walls replied, "[Y]ou're not going to stab anybody," and told Rogers to calm down.

Tr. pp. 59–6〈〉. Rogers then called Walls a vulgar name and stabbed him in the left side of the neck with a steak knife, which cut Walls's carotid artery. Rogers dropped the knife, turned around, and quickly walked out of the apartment.

The knife which Rogers used to stab Walls stuck in Walls's neck. When it was removed, Walls began to bleed profusely. Walls attempted to leave the apartment, but collapsed in the parking lot and lost consciousness. D.W. telephoned 911, and an ambulance arrived to take Walls to the hospital. At the hospital, Walls underwent surgery to repair the damage to his neck, but Walls ultimately died.

■ On August 15, 2007, the State charged Rogers with murder.[1] Prior to trial, Rogers filed a motion in limine seeking to prevent the State from admitting evidence indicating that Rogers had previously been seen in possession of a steak knife similar to that used to stab Walls. The trial court denied this motion. A jury trial commenced on February 4, 2008. At trial, the trial court overruled Rogers's objection to the testimony of witnesses who testified that they had previously seen Rogers in possession of a steak knife. The trial court also overruled Rogers's objection to the admission of photographs of Walls taken during the autopsy. Toward the end of the trial, Rogers tendered a jury instruction on voluntary intoxication. The trial court rejected this instruction and instead gave the jury an instruction which contained only part of the language of the instruction tendered by Rogers. On

Februa. y 7, 2008, the jury found Rogers guilty of murder. The trial court entered a judgment of conviction on the verdict and scheduled a sentencing hearing.

At the sentencing hearing, the trial court found as aggravating that the crime had been committed in the presence of persons under the age of eighteen and that Rogers had a history of criminal and delinquent behavior. The trial court found no mitigating circumstances and concluded that a sentence in excess of the advisory sentence was called for. The trial court therefore sentenced Rogers to sixty-two years incarceration. Rogers now appeals.

## I. Prior Possession of Steak Knife

■ Rogers claims that the trial court erred in admitting testimony which indicated that he had previously been seen with a steak knife. The admission of evidence is within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *State v. Seabrooks*, 803 N.E.2d 1190, 1193 (Ind.Ct.App.2004). A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

■ In the present case, the host of the party, Hobbs, testified that in the months prior to the stabbing, he had seen a black-handled steak knife in a backpack which Rogers carried with him. Another individual, Demarco Lewis, testified that when Rogers had been in his apartment earlier that year, Rogers had shown him a

---

1. The caption of the charging information indicates that the charge was for "A Felony" murder. We would observe, however, that murder is not an A felony; pursuant to the relevant statute, murder is simply "a felony." Ind.Code § 35–42–1–1 (2004). Although Rogers makes no claim of error in this regard, we would note that the body of the charging information charges Rogers with murder as

defined by the relevant statute. Even if the caption of a charging information contains errors, it is the allegation in the body of the information that defines the crime charged. *Woodcox v. State*, 591 N.E.2d 1019, 1025 (Ind. 1992), *abrogated on other grounds by Richardson v. State*, 717 N.E.2d 32 (1999); *see also Hestand v. State*, 491 N.E.2d 976, 980 (Ind. 1986).

steak knife which he was carrying in his pocket. Rogers claims that this evidence was admitted in violation of Indiana Evidence Rule 404(b), which provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evidence Rule 404(b) was designed to assure that the State, relying upon evidence of uncharged misconduct, does not punish a person for his character. *Lee v. State*, 689 N.E.2d 435, 439 (Ind.1997). The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Herrera v. State*, 710 N.E.2d 931, 935 (Ind.Ct.App.1999).

Here, Rogers claims that the evidence regarding his prior possession of a steak knife should have been excluded pursuant to Rule 404(b). The State argues that simple possession of a knife is not evidence of a crime or wrong to which Rule 404(b) applies. A similar issue was before our supreme court in *Williams v. State*, 690 N.E.2d 162 (Ind.1997), wherein the defen-

dant claimed that evidence regarding his prior possession of weapons and ammunition was admitted in violation of Rule 404(b). The court stated, "it is by no means clear that weapons possession, evidence of gun sales, and the like, are necessarily prior 'bad acts' for 404(b) purposes.'"[2] *Id.* at 175; *see also Pickens v. State*, 764 N.E.2d 295, 299 (Ind.Ct.App. 2002) (citing *Williams* and indicating that possession of assault weapon was not necessarily a "bad act" for purposes of Rule 404(b)).

If the possession of firearms is not a "bad act" for purpose of Rule 404(b), we are unable to say that the possession of a common steak knife is the sort of evidence to which Rule 404(b) applies. This is not to say that, under the proper circumstances, the possession of a knife could not constitute a "bad act" for purposes of Rule 404(b). But there is no indication here that Rogers behaved in any criminal or improper manner when he was previously seen in possession of a steak knife. We therefore conclude that Rule 404(b) does not apply to the evidence that Rogers had previously been seen in possession of a steak knife.[3] *See Williams*, 690 N.E.2d at 175; *Pickens*, 764 N.E.2d at 299.

■ Even assuming that Rogers's prior possession of a steak knife was the sort of evidence to which Evidence Rule 404(b) applies, Rogers would still not prevail. Evidence that the defendant had access to a weapon of the type used in the crime is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Pickens*, 764 N.E.2d at 299. Thus, the evidence that Rogers had access

---

**2.** The *Williams* court concluded, however, that this argument was waived for failure to object at trial. *Id.* at 175.

**3.** Furthermore, to the extent that Rogers's possession of a steak knife might have implied misconduct, evidence which creates a mere

inference of prior bad conduct does not fall within the purview of Rule 404(b). *Dixson v. State*, 865 N.E.2d 704, 712 (Ind.Ct.App.2007), *trans. denied; Allen v. State*, 743 N.E.2d 1222, 1232 (Ind.Ct.App.2001), *trans. denied.*

to a steak knife was relevant to a matter other than "the forbidden inference." *See id.; see also Dickens v. State,* 754 N.E.2d 1, 4 (Ind.2001) (concluding that evidence that defendant was seen carrying a gun just two days before shooting went to his opportunity to commit the shooting).

 Moreover, even if we were to assume that the admission of this evidence was erroneous, we would conclude that such was harmless. Errors in the admission of evidence are to be disregarded as harmless unless they affect the defendant's substantial rights. *Stewart v. State,* 754 N.E.2d 492, 496 (Ind.2001); Ind. Trial Rule 61; Ind. Evidence Rule 103(a). An error will be deemed harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Id.* Here, the State presented the testimony of three witnesses who saw Rogers stab Walls in the neck with a steak knife. In light of this, we conclude that any error in the admission of evidence of Rogers's prior possession of a steak knife was harmless.

## II. Autopsy Photographs

 Rogers next claims that the trial court erred by admitting into evidence autopsy photographs of the victim. Our supreme court has set forth the following standard of review for the admission of autopsy photographs:

Because the admission and exclusion of evidence falls within the sound discretion of the trial court, this Court reviews the admission of photographic evidence only for abuse of discretion. Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally. Photographs, even those gruesome in nature, are admissible if they act as interpretative aids for the jury and have strong probative value.

*Corbett v. State,* 764 N.E.2d 622, 627 (Ind. 2002) (citations and internal quotations omitted). Autopsy photographs sometimes present unique problems because the pathologist has manipulated the corpse in some way during the autopsy. *Id.* Autopsy photographs are generally inadmissible if they show the body in an altered condition, but there are situations where some alteration of the body is necessary to demonstrate the testimony being given. *Id.*

The photographs at issue in the present case consist of one photograph of the victim's head and neck, one of the victim's neck, one close-up shot of the victim's neck showing the puncture would caused by the knife, and five of the victim's hands. The photographs of the hands are not gruesome, and were used during the testimony of Detective William Schafer to establish that there were no defensive wounds on the victim's hands. Although the hands showed some discoloration, Detective Schafer explained to the jury that this was not bruising but the result of lividity. One photograph also showed some tape with blood, but this too was explained to the jury as being the result of surgery or the intravenous line, not from the stabbing. Given the probative value of these photographs, and their non-gruesome nature, we cannot say that the trial court erred in allowing them into evidence.

The photographs of the victim's head and neck are slightly more graphic. The first of these photographs shows the defendant's entire head and neck, and a small portion of his upper chest. It shows not only the stab wound, but also the

sutured incision made during the attempt to repair the damage done to the victim's artery and a small portion of the sutured incision made when the victim's organs were harvested. Also depicted is a tube inserted into the victim's airway during surgery. The second photo shows in more detail the stab wound and the incision made during surgery, but does not depict the victim's face. The last photograph is a close up of the stab wound.

Although the condition of the victim's body in these photographs was slightly altered, all of these alterations were explained to the jury by the testimony of the medical examiner. *See Fentress v. State,* 702 N.E.2d 721, 722 (Ind.1998) (where pathologist testified as to alterations of victim's body and that such were necessary to determine extent of injuries, potential for confusion was minimal, and probative value outweighed prejudicial effect). Further, although these photographs are more disturbing than the photographs of the victim's hands, they are not particularly gruesome. Instead, they show the victim's injuries and demonstrated the testimony of the medical examiner who performed the autopsy. Photographs depicting the victim's injuries or demonstrating a witness's testimony are generally relevant and therefore admissible and will not be rejected merely because they are gruesome or cumulative. *Kubsch v. State,* 784 N.E.2d 905, 923 (Ind.2003). We therefore conclude that the trial court did not abuse its discretion in admitting the photographs in question into evidence.

■ And again, even if we were to conclude that these photographs were erroneously admitted, Rogers would not prevail. In light of the fact that three witnesses testified that they saw Rogers stab Walls in the neck with a steak knife, any error in the admission of the autopsy photographs was at most harmless error.

## III. Jury Instruction

■ Rogers next claims that the trial court erred in not submitting to the jury the full text of the instruction he tendered regarding voluntary intoxication. The manner of instructing a jury is left to the sound discretion of the trial court. *Henderson v. State,* 795 N.E.2d 473, 477 (Ind.Ct.App.2003), *trans. denied.* We will not reverse the trial court's ruling unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole and in reference to each other, and even an erroneous instruction will not constitute reversible error if the instructions, taken as a whole, do not misstate the law or otherwise mislead the jury. *Id.* In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other given instructions. *Id.*

Here, Rogers tendered a proposed final jury instruction which read:

Voluntary intoxication is not a defense to a charge of Murder. You may not take voluntary intoxication into consideration in determining whether the defendant acted intentionally or knowingly as alleged in the information.

*You are instructed, however, that the State bears the burden of proving the accused's intent at the time of the charged offense.*

Appellant's App. p. 3(b) (emphasis added). The trial court gave an instruction which substantially tracked the first paragraph

of Rogers's tendered instruction[4] but which omitted the second paragraph. Rogers now claims that the omission of the second paragraph of his tendered instruction was reversible error. He is mistaken.

Assuming that the second paragraph of Rogers's tendered instruction was a correct statement of the law,[5] the substance of this instruction was covered by other instructions given by the trial court. In fact, the jury was instructed at least three separate times that the State bore the burden of proving each element of the crime charged, including intent, beyond a reasonable doubt: once in the instruction setting forth the elements of the crime, again in the instruction explaining that Rogers was presumed innocent, and yet again in the instruction defining reasonable doubt.[6] Thus, the jury was instructed that the State bore the burden of proving all of the elements of the crime of murder, and the jury was instructed that one of the elements of the crime of murder was that Rogers knowingly or intentionally killed Walls. The jury was further instructed that they were to consider the instructions as a whole. Therefore, the substance of the second paragraph of Rogers's tendered instruction regarding the State's burden of proving his intent at the time of the crime was covered by the other given instructions. Under these facts and circumstances, the trial court did not err in refusing to give Rogers's tendered instruction.

## IV. Sentencing

Rogers next claims that the trial court erred by imposing a sentence based upon facts not found by the jury, in alleged violation of the rule set forth in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), our supreme court held that *Blakely* applied to Indiana's then-current "presumptive" sentencing scheme. Specifically, the court held that the presumptive sentence was the " 'statutory maximum' " sentence for *Blakely* purposes because this was the maximum sentence that a trial court could impose without finding aggravating circumstances. *See id.* at 683–84. This scheme ran afoul of the *Blakely* rule because it allowed the trial court to deviate from the presumptive sentence based upon facts not proven to the jury beyond a reasonable doubt.[7] *Id.* at 685.

In response to *Blakely* and *Smylie*, the General Assembly amended Indiana's sentencing statutes effective April 25, 2005 to refer to an "advisory" instead of a "presumptive" sentence. Because Rogers com-

---

**4.** The instruction given by the trial court read:

> Voluntary intoxication is not a defense to a charge of murder, voluntary manslaughter, or reckless homicide. You may not take voluntary intoxication into consideration in determining whether the defendant acted intentionally, knowingly, or recklessly as alleged or included in the Information.

Tr. p. 665.

**5.** Our supreme court has held that the voluntary intoxication statute eliminates the requirement that a voluntarily intoxicated defendant act "knowingly" or "intentionally" as to those crimes that include these elements. *Sanchez v. State*, 749 N.E.2d 509, 517 (Ind. 2001) (citing Ind.Code § 35–41–2–5). There-

fore, if the State proved that Rogers acted while voluntarily intoxicated, it met its burden of proving Rogers's *mens rea* for the crime of murder. *See id.*

**6.** The trial court also gave the jury instructions regarding the lesser included offenses of voluntary manslaughter and reckless homicide. Although Rogers was not convicted of these offenses, the jury instructions regarding these offenses also explained that the State bore the burden of proving the *mens rea* of these crimes.

**7.** The *Smylie* court upheld the presumptive sentencing scheme, but modified it in light of *Blakely* to require that aggravating factors be proven to the jury. *Id.* at 685–86.

mitted his crime in 2007, after the effective date of these amendments, this new advisory sentencing scheme is applicable to his sentence. *See Anglemyer v. State,* 868 N.E.2d 482, 491 n. 9 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218.

Under the current advisory sentencing statutes, the trial court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating or mitigating circumstances." *Id.* at 489 (quoting Ind.Code § 35–38–1–7.1(d)). The *Anglemyer* court explained the effect of these amendments thusly:

> By eliminating fixed terms, the Legislature created a regime in which there is no longer a maximum sentence a judge may impose without any additional findings. And this is so because for *Blakely* purposes the maximum sentence is now the upper statutory limit. As a result, even with judicial findings of aggravating circumstances, it is now impossible to increase ... the penalty for a crime beyond the prescribed statutory maximum.

*Id.* (citations and internal quotations omitted).

Because it is now impossible to increase the penalty for a crime beyond the statutory maximum, there can be no *Blakely* violation. *See id.; Miller v. State,* 884 N.E.2d 922, 926 (Ind.Ct.App.2008) (noting that *Blakely* rule is not applicable under our current advisory sentencing scheme), *adhered to on reh'g,* 891 N.E.2d 58; *see also Cunningham v. California,* 549 U.S. 270, 294, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) (noting that Indiana's post-*Blakely* sentencing scheme permits trial judges to exercise broad discretion within a statutory range, "which, 'everyone agrees,' encounters no Sixth Amendment shoal.") (citation omitted).

In short, under the current advisory sentencing scheme, there can be no *Blake-*

*ly* violation. Because Rogers was sentenced under the advisory sentencing scheme, his *Blakely* claim necessarily fails.

## IV. Ineffective Assistance of Trial Counsel

Lastly, Rogers claims that he was denied the effective assistance of trial counsel. To prevail upon a claim of ineffective assistance of trial counsel, a defendant must demonstrate both that his trial counsel's performance was deficient and that he was prejudiced by such deficient performance. *Polk v. State,* 822 N.E.2d 239, 244 (Ind.Ct.App.2005), *trans. denied; Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance is deemed deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Polk,* 822 N.E.2d at 245. To establish the resulting prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Failure to satisfy either prong will cause the ineffectiveness claim to fail, and most ineffectiveness claims can be resolved by a prejudice inquiry alone. *Polk,* 822 N.E.2d at 245.

■ We also note that Rogers brings his claim of ineffective assistance of trial counsel on direct appeal. While this is not prohibited, post-conviction proceedings are usually the preferred forum for adjudicating claims of ineffective assistance of counsel. *See McIntire v. State,* 717 N.E.2d 96, 101 (Ind.1999); *Woods v. State,* 701 N.E.2d 1208, 1219 (Ind.1998). This is so because presenting such claims often requires the development of new facts not present in

the trial record. *McIntire,* 717 N.E.2d at 101.

■ Although a defendant may choose to present a claim of ineffective assistance of counsel on direct appeal, if he so chooses, the issue will be foreclosed from collateral review. *Id.* at 102; *Woods,* 701 N.E.2d at 1220. In *Woods,* our supreme court observed that this rule would "likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal." 701 N.E.2d at 1220. " 'It is no surprise that such claims [based solely on the trial record] almost always fail.' " *Id.* at 1216 (quoting *United States v. Taglia,* 922 F.2d 413, 418 (7th Cir.1991)).

■ Rogers claims that his trial counsel rendered ineffective assistance by not properly objecting to the testimony of the State's expert witness, Tabitha Bullock, who testified regarding the DNA evidence collected during the investigation. Rogers claims, however, that Ms. Bullock did not personally conduct the DNA tests; instead, Denise Leverette conducted the tests but was unavailable to testify because of complications which arose during her pregnancy. Rogers claims that the State established only that Ms. Bullock was an expert in the field of DNA testing but did not connect her to the evidence in this case. According to Rogers, it was his trial counsel who asked preliminary questions which had the effect of connecting Ms. Bullock to this case, thereby laying a foundation for her testimony. This, Rogers claims, amounted to the ineffective assistance of trial counsel.

■ Because Rogers brings his claim on direct appeal, we have no testimony from his trial counsel which might explain his conduct at trial. " 'When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight.' " *Woods,* 701 N.E.2d at 1216 (quoting *Taglia,* 922 F.2d at 417–18).

Had Rogers's trial counsel objected to Ms. Bullock's testimony, it is very likely that the State would been able to lay the foundation for Ms. Bullock's testimony. Ms. Bullock testified that, although Ms. Leverette signed the forensic case report, the laboratory testing had been performed by both Ms. Leverette and herself as a pair per laboratory protocol. Ms. Bullock had to perform some of the tests by herself because the toxic nature of some of the chemicals involved could be dangerous to the pregnant Ms. Leverette. Ms. Bullock testified that she had first-hand knowledge of the entire forensic case report, which she described as accurate and complete. Given this, Rogers does not explain how or why, even if his trial counsel had objected to Ms. Bullock's testimony, her testimony would have to have been suppressed.

■ More importantly, even if we presume that counsel's conduct fell below an objective standard of reasonableness, Rogers has not established that, but for his counsel's alleged errors, the result of the proceeding would have been different. In other words, even if Rogers's trial counsel had managed to suppress the testimony of Ms. Bullock and the DNA evidence admitted during her testimony, we are convinced that the result of the proceeding would have been the same. This is so because Ms. Bullock's testimony and the DNA evidence did not directly connect Rogers to the crime.

The DNA collected from the blood on the knife and at the scene identified this blood as coming from Walls, whereas the DNA collected from the blood on Rogers's clothing identified the blood as being Rogers's own. There was no DNA evidence

showing Walls's blood on Rogers's clothing or Rogers's blood at the scene of the crime. It is therefore difficult for us to understand how Rogers was prejudiced by the admission of Ms. Bullock's testimony and the DNA evidence. This is especially so given that three witnesses testified that they saw Rogers stab Walls in the neck with a steak knife. Rogers has not established that he was prejudiced by his counsel's alleged errors, and his claim of ineffective assistance of trial counsel fails.

## Conclusion

First, the trial court did not err in admitting evidence regarding Rogers's prior possession of a steak knife because the possession of a steak knife is not, by itself, the sort of evidence to which Evidence Rule 404(b) applies. Second, the trial court did not err in the admission of the photographs taken of the victim during the autopsy. Moreover, even if the admission of this evidence was erroneous, any error would be harmless in light of the three eyewitnesses who saw Rogers stab Walls in the neck. Third, the trial court did not err in refusing to give Rogers's tendered instruction regarding the State's burden to prove intent because this subject was already covered by the other instructions given by the trial court. Fourth, the trial court did not err in sentencing Rogers because he was sentenced under the post-*Blakely* advisory sentencing scheme to which the *Blakely* rule is inapplicable. Lastly, Rogers has not established that he was denied the effective assistance of trial counsel because he has not shown that his trial counsel erred or that, even if he did, he was prejudiced thereby.

Affirmed.

BAKER, C.J., and BROWN, J., concur.