## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 29 2016, 7:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Anne Murray Burgess
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jermarcus L. Grandberry,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 29, 2016

Court of Appeals Case No.
02A03-1511-PC-1874

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D06-1204-PC-53

**Mathias, Judge.**

[1]     Jermarcus L. Grandberry ("Grandberry") appeals the order of the Allen Superior Court denying his petition for post-conviction relief. On appeal,

Grandberry claims that the post-conviction court erred by: (1) determining that he was not denied the effective assistance of trial counsel; and (2) rejecting his claim that the prosecutor committed misconduct.

[2]     We affirm.

## Facts and Procedural History

[3]     The facts underlying Grandberry's conviction were set forth in our memorandum decision on direct appeal as follows:

> On May 9, 2010, Grandberry lived with his then girlfriend, Takelia Stewart, at an apartment at 1910 Hobson Road in Allen County. Grandberry occasionally borrowed Stewart's green Ford Escort hatchback. On May 9, Grandberry borrowed Stewart's car and, at noon, he picked up his brother, Sedrick Grandberry.

> At approximately two o'clock, a green Ford Escort pulled into the driveway of 3711 [Glencairn] Drive in Fort Wayne. Brett Coates, who lived nearby at 3204 [Glencairn] Drive in Fort Wayne observed from his living room the green Ford Escort pull into his neighbor's driveway. The neighbor was not home. Coates observed an African-American male exit the car and knock on the door at 3711 Glencairn. When there was no answer, the man returned to the car and left. Fifteen minutes later, Coates saw the car return to the neighbor's home, this time backing up the driveway and through the yard. Coates found that activity to be suspicious and telephoned the police.

> On the same afternoon, Harold Friedrich was walking his dog along Victoria Drive in Fort Wayne. When he was near the home at 4612 Victoria Drive, he observed a station wagon back out of the driveway very fast. About twenty-five minutes later, he was walking his dog again in the same area and saw between

houses two African-American men carrying a television, but he did not see any cars. Friedrich assumed there had been a robbery, was able to note a partial license place number from the car that had sped past him, and telephoned the police.

Edwina Snyder was living in Fort Wayne at 4612 Victoria Drive, which lies diagonally from Coates' home and is "directly behind" 3117 Glencairn Drive. Transcript at 160. On May 9, she returned home from a trip to find that her back door was "wide open." *Id*. at 113. She also found that the lock had been damaged and that the casement window in her kitchen had also been "jimmied open." *Id*. Snyder then noticed that her television and DVD player were missing. Further inspection revealed that her laptop computer, other computer equipment, CDs, and jewelry were also missing. And she found on the floor a nonoperational rifle that had been hanging over the fireplace. Snyder telephoned the Fort Wayne Police Department.

Grandberry and his brother returned in the car to Stewart's apartment at two-thirty in the afternoon. When they arrived at her apartment, they brought in electronics, a laptop computer, some jewelry, and a DVD player that they had not previously possessed. And they left a television in the car. The men later disposed of the television in a dumpster. That afternoon, Stewart also found CDs in her car that had not been there before Grandberry had used the car.

Officer Matthew Cline of the Fort Wayne Police Department ("FWPD") was dispatched to the area of Snyder's home twice on May 9. On the first occasion, he went to 3117 Glencairn and spoke with Coates. The officer found CDs scattered in the yard and collected them for evidence. On Officer Cline's second dispatch he went to Snyder's home. There he assisted the primary officer on the scene and observed the damage to Snyder's door and window.

Using the partial license plate number provided by Friedrich, police officers identified Stewart's Escort as the car that had been in the area of Snyder's home. On May 11, FWPD Detective Joseph Lyon interviewed Stewart at the police department. Stewart gave consent for police to search the vehicle, and officers found some of Snyder's CDs inside. Stewart told officers that on May 9 she had loaned her vehicle to Grandberry, that Grandberry had returned with his brother in her vehicle at two-thirty on that day, and that Grandberry had in his possession at that time a television, CDs, a laptop computer, and jewelry that he had not had when he had originally borrowed the car.

Subsequently on May 11, Detective Lyon interviewed Grandberry. After being advised of and waiving his *Miranda* rights, Grandberry admitted that he had borrowed Stewart's car on the afternoon of May 9, that he had been the only one in control of the car that afternoon, and that he had been with his brother. But he denied having committed the robbery. The detective advised Grandberry that property from 4612 Victoria Drive had been found in a search of Stewart's car and reminded him that he had already admitted that only he had had control of the car on the afternoon of May 9. Grandberry replied, "If I had known you were talking about a burglary I never would have admitted to being in that car." Appellant's App. at 8.

*Grandberry v. State*, No. 02A05-1010-CR-643, 2011 WL 1733543 at *1-2 (Ind. Ct. App. May 6, 2011), *trans. denied*.

[4] The State charged Grandberry with one count of Class B felony burglary. Following a jury trial, Grandberry was found guilty as charged, and the trial court sentenced Grandberry to fifteen years executed. On direct appeal, Grandberry presented four issues: (1) whether the evidence was sufficient to support his conviction; (2) whether the trial court erred in excluding evidence of

bias, prejudice, or interest concerning Stewart; (3) whether the trial court abused its discretion in failing to identify certain mitigating factors; and (4) whether Grandberry's fifteen-year sentence was inappropriate. We rejected all of Grandberry's claims and affirmed his conviction and sentence. *See id* at 8.

On April 11, 2012, Grandberry filed a *pro se* petition for post-conviction relief. On October 10, 2014, Grandberry, now represented by the State Public Defender, filed an amended petition. The post-conviction court held a hearing on the matter on March 6, 2015. On October 14, 2015, the post-conviction court entered specific findings and conclusions denying Grandberry's petition. Grandberry now appeals.

## Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Thus, on appeal from the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads

unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44.

[7] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

## I. Ineffective Assistance of Trial Counsel

[8] Grandberry claims that his trial counsel was ineffective. Our supreme court has summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced

the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

*Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

### A. Misquotation of Grandberry's Statement to the Police

Grandberry first claims that his trial counsel should have impeached Detective Lyon's testimony recounting what Grandberry told Lyon during his interrogation by the police.

During his interrogation, Grandberry admitted that he had been driving Stewart's car. Detective Lyon testified at trial that Grandberry stated, "If I knew that this was a burglary investigation, I never would have told you I was in that

car." Trial Tr. p. 214. Detective Lyon characterized this as a "direct quote." *Id*. However, according to the recording of the interrogation, Grandberry actually said, "If I go out to get and get a burglary on Sunday, I wouldn't have told you I used her car Sunday," and, "I'm telling you if I did a burglary on Sunday I wouldn't have told you I used her car Sunday." Ex. Vol., Petitioner's Ex. 4, p.38.

[11] Grandberry argues that Lyon's misquote took what was essentially a denial of guilt—i.e., "if I had actually committed the burglary that day, why would I tell you I was in the car on that day?"—and transformed it in to what was an admission of guilt—i.e., "I wouldn't have told you I was in the car if I had known this was a burglary investigation." Grandberry claims that his trial counsel's failure to either object to this mischaracterization or to impeach Detective Lyon regarding his misquote constitutes deficient performance.

[12] The State does not deny that Detective Lyon misquoted Grandberry's statement during the interrogation. However, the State claims that the failure to impeach Detective Lyon's testimony did not constitute deficient performance. We agree.

[13] Grandberry's trial counsel testified at the post-conviction hearing. He admitted that he did not notice the discrepancy between Grandberry's actual statements and Detective Lyon's misquotation. Even if he had, he explained that the effect was essentially the same—Grandberry admitted that he had been in possession of Stewart's car at the time of the burglary. He testified that, as a matter of

strategy, he would not want to bring this topic back to the attention of the jury by either objecting or attempting to impeach the detective's testimony.

[14] Moreover, as noted by the post-conviction court, if trial counsel had attempted to impeach Detective Lyon's testimony with the recording of Grandberry's interrogation, this would have created the potential that the entire interrogation be admitted under the rule of completeness. *See* Ind. Evidence Rule 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). This rule may be used to admit omitted portions of a statement in order to (1) explain the admitted portion; (2) place the admitted portion in context; (3) avoid misleading the trier of fact; or (4) insure a fair trial and impartial understanding of the admitted portion. *Hawkins v. State*, 884 N.E.2d 939, 947 (Ind. Ct. App. 2008), *trans. denied*. Had this rule been used to present even more of Grandberry's statements to Detective Lyon, the results would not have been helpful to his defense.

[15] During the interrogation, Grandberry made inconsistent statements regarding the details of the day of the burglary. He also stated that he knew "from experience" not to involve a "female" in criminal endeavors because "they'll break under pressure." PCR Ex. Vol., Pet. Ex. 4, p. 27. He also stated that he would not pawn any stolen goods because he was smart enough to find a drug addict to whom he could sell the goods. *Id*. at 31.

[16] Additionally, Grandberry later did make a statement more akin to what Detective Lyon described:

| | |
|---|---|
| [Lyon]: | You were in the car the day of the burglary. You said you were in the car the day of the burglary. |
| [Grandberry]: | I was in the car on Sunday to go see my momma. |
| [Lyon]: | That's when the house was burglarized. |
| [Grandberry]: | Don't mean I did [it]. |
| [Lyon]: | I told you that. |
| [Grandberry]: | Man, you didn't tell me. You said what about Sunday. |
| [Lyon]: | Yeah. That's the day of the burglary. |
| [Grandberry]: | *You didn't tell me until afterwards.* |

*Id*. at 34-35. The effect of this statement is that Grandberry felt tricked by Detective Lyon because he asked Grandberry where he was on Sunday and only later stated that the burglary occurred on Sunday. From this, one could reasonably infer that Grandberry would not have admitted to being in the car on Sunday if the detective had told him up front that Sunday was the day of the burglary.

[17] Thus, had Grandberry's actual statement to the police came into evidence, the result would have been the same—Grandberry admitted to being in possession of the car on the day of the burglary and expressed consternation that he had admitted to being in possession of the car on that day. Under these facts and

circumstances, we cannot say that trial counsel's strategy not to impeach Detective Lyon constituted deficient performance.

[18] Furthermore, during closing argument, Grandberry's trial counsel did attempt to spin the admission that he had been in possession of the car as evidence that he had *not* committed the robbery. Specifically, trial counsel stated, "Don't you think if you had committed a burglary, why would you admit to being in the car that you committed the burglary in?" Trial Tr. p. 247. Thus, he explained to the jury the gist of Grandberry's actual statement.

[19] Lastly, even if we were to agree with Grandberry that his trial counsel's failure to impeach Officer Lyon's testimony constituted deficient performance, we disagree that this prejudiced Grandberry. To be sure, the State did reference Officer Lyon's misquotation in its opening and closing statements. However, as noted above, Grandberry's trial counsel made an effective counterargument by questioning why Grandberry would admit to being in possession of the car if he knew that it had been seen at the burglary.

[20] Furthermore, the evidence against Grandberry was largely circumstantial but significant: Grandberry was in possession of the car seen at the burglary; two men generally matching the description of Grandberry and his brother were seen at the burglarized home carrying a television; and Grandberry's girlfriend testified that Grandberry and his brother returned to her home with items matching those stolen during the burglary. In light of this evidence, even if trial counsel had impeached Detective Lyon's testimony regarding his misquotation

of Grandberry's statement, we cannot say that the result would have been any different. The effect of Grandberry's statement remained that he admitted to being in possession of the car during the general period when the burglary was committed.

*B. Failure to Present Evidence Regarding When Grandberry Possessed the Car*

Grandberry also faults his trial counsel for not cross-examining Detective Lyon regarding the time of day that Grandberry admitted to being in possession of Stewart's car. Detective Lyon testified that Grandberry admitted to being in possession of the car during the afternoon of the day of the burglary. Grandberry claims, however, that his statement to Detective Lyon regarding the exact time that he was in possession of the car was equivocal: he stated that he could have gone to his mother's home from anywhere between 12:00 p.m. and 6:00 p.m. that day, then visited his stepmother. As the burglary occurred sometime between 2:00 p.m. and 2:30 p.m., Grandberry now claims that he "could have visited his mothers in the 2 hours before the burglary or the three hours after." Appellant's Br. at 17.

Considering the full context of Grandberry's statements, we cannot conclude that his trial counsel was deficient for failing to press this issue further. Grandberry initially told Detective Lyon that he had the car in the afternoon or evening of the day of the burglary. He later indicated that he had possession of the car soon after he woke up in the late morning. When Detective Lyon asked what Grandberry meant by late afternoon or evening, Grandberry replied, "like really like 12:00 and 3:00 between. Sometime." PCR Ex. Vol., Petitioner's Ex.

4, p. 13. When Detective Lyon further attempted to clarify the time, Grandberry responded that he had the vehicle "somewhere late afternoon . . . Early afternoon as you called it." *Id.* at 13. Detective Lyon then asked if it was "somewhere after noon and before 6:00," Petitioner replied, "yeah, it was before 6:00." *Id.* at 14.

[23] None of these somewhat confusing statements to Detective Lyon provides much support to Grandberry's claim that he did not commit the burglary. It merely acts to emphasize that he did possess the car seen at the burglary during the afternoon that the burglary took place. We therefore cannot fault his trial counsel for failing to elucidate further testimony on the time of his possession of the car.

### C. Evidence of Prior Bad Acts

[24] Grandberry's final claim of ineffective assistance of trial counsel involves the testimony of Grandberry's girlfriend at the time, Stewart. During direct examination, the following exchange took place between the prosecuting attorney and Stewart:

> Q. All right. Let's talk about that. Did you have conversation with the Defendant about the stuff that he was bringing into your apartment?
>
> A. I don't recall the conversation, but I know I did have a conversation with him.
>
> Q. Okay. What was your—what were your emotions about them bringing this stuff in?

A.      My emotions were oh, you know, *he's bringing more items into my house*, you know. I'm tired of this. You know.

Trial Tr. p. 178 (emphasis added).

[25]    According to Grandberry, this was a reference to prior incidents in which Grandberry brought stolen items into Stewart's house and that his trial counsel should therefore have objected to this testimony on grounds that it was inadmissible under Indiana Evidence Rule 404(b). At the time of Grandberry's trial, this rule provided:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Ind. Evid. Rule 404(b). Evidence Rule 404(b) was designed to assure that the State, relying upon evidence of uncharged misconduct, does not punish a person for his character. *Rogers v. State*, 897 N.E.2d 955, 960 (Ind. Ct. App. 2008), *trans. denied*. The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Id.*

Here, nothing in the challenged portion of Stewart's testimony indicates that Grandberry has a propensity to commit the charged crime. It simply refers to him bringing more items into her house. Although Grandberry claims that the jury could infer from this that Stewart was referring to past instances of him bringing more stolen items into her house, nothing in her response suggests this. Moreover, "evidence which creates a mere inference of prior bad conduct does not fall within the purview of Evidence Rule 404(b)." *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009) (citing *Rogers*, 897 N.E.2d at 960 n.30). Thus, even if Grandberry's trial counsel had objected, the trial court would not have sustained the objection because Stewart's testimony was not subject to Evidence Rule 404(b).

*D. Cumulative Error*

Grandberry also claims that the cumulative effect of the errors of his trial counsel amounts to ineffective assistance of counsel. Errors by counsel that are not by themselves sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively. *French v. State*, 778 N.E.2d 816, 826 (Ind. 2002). However, we have determined that Grandberry's claims regarding his trial counsel's performance are without merit. "Alleged trial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." *Myers v. State*, 33 N.E.3d 1077, 1114 (Ind. Ct. App. 2015) (citations and internal quotations omitted), *trans. denied*. Accordingly, we are not persuaded by Grandberry's claim of cumulative error.

## II. Prosecutorial Misconduct

[28] Grandberry also claims that the State's use of the "false" testimony of Detective Lyon was improper. Grandberry refers to the same misquotation addressed above and argues that the State's use of this misquotation constituted a denial of due process. We conclude, however, that Grandberry may not bring this free-standing claim of error for the first time in a petition for post-conviction relief.

[29] As noted above, post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary*, 761 N.E.2d at 391. "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal."[1] *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

[30] Grandberry argues that his claim was demonstrably unavailable on direct appeal because the discrepancy between what Grandberry actually stated and the misquotation by Detective Lyon are not apparent on the record. Again, the actual recording of the interrogation and/or a transcript thereof was not admitted into evidence at trial. However, Grandberry's trial counsel was also his appellate counsel. Also, his counsel testified at the post-conviction hearing

---

[1] We note that Grandberry also presents this claim in the context of a claim of ineffective assistance of trial counsel, which we have rejected above.

that he had viewed the recording of the interrogation before trial. Moreover, Grandberry himself was the one who spoke to Detective Lyon. Therefore, either or both of them could have recognized the misquotation, and we are unable to say that this issue was demonstrably unavailable at the time of his direct appeal. Indeed, Grandberry could have filed a motion to correct error in order to put the recording of his interrogation into the record for appeal.

## Conclusion

[31] The post-conviction court did not clearly err in rejecting Grandberry's claim that he was denied the effective assistance of trial counsel. Grandberry's claim of prosecutorial misconduct cannot be brought as a free-standing claim in a post-conviction petition because it was not demonstrably unavailable to him on direct appeal.

[32] Affirmed.

Kirsch, J., and Brown, J., concur.