**Spencer NORVELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A02–1104–CR–349.**

Court of Appeals of Indiana.

Dec. 6, 2011.

Ordered Published Jan. 18, 2012.

---

Alan K. Wilson, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Spencer Norvell appeals his conviction for Trafficking with an Inmate,[1] a class C felony. Norvell challenges the sufficiency of the evidence supporting his conviction as the sole issue on appeal.

We affirm.

In August and September 2010, Norvell was incarcerated in the Delaware County Jail, Cell Block E. At the time Norvell was dating Tishayla Joyce. On August 26, 2010, Norvell had a fellow inmate, Marcus Beck, call Joyce on Norvell's behalf because he was unable to access a jail phone. Beck relayed statements back and forth between Norvell and Joyce. Norvell asked Joyce via Beck to bring a cell phone to the jail for him. Cell phones are not allowed in the jail and are against jail rules.

Norvell instructed Joyce to withdraw money from his commissary account[2] and use that money to purchase a cell phone from Walmart along with prepaid minutes for the phone. Norvell further instructed Joyce to activate the phone and bring it to the outside of the jail at 1:00 a.m. Norvell told Joyce on which side of the jail his cell was located. Joyce did as Norvell instructed. When Joyce arrived at the jail

1. Ind. Code Ann. § 35–44–3–9(b)(1), (d)(3) (West, Westlaw current through 2011 1st Regular Sess.).

2. Joyce withdrew $376.57 from Norvell's commissary account.

at 1:00 a.m., she saw Norvell and Shawn West, Norvell's cell mate, standing at the window to their jail cell. West let down a string, Joyce tied the cell phone to the string, and West pulled the phone up and through the cell window. At Norvell's request, Joyce returned to the jail on another day at the same time and delivered a phone charger. As in the first instance, West dropped a string down from the cell window and pulled the phone charger up. Norvell used the cell phone to call Joyce. Another inmate, Jackie Joiner, saw Norvell and West both using the cell phone and Norvell explained to Joiner that they had brought the phone in through the window.

On September 5, 2010, Kevin McCaffery, a shift corporal with the jail, received a letter from an inmate that caused him to initiate a search of Cell Block E. During a search of Cell E–1, the cell shared by Norvell and West, jail officials discovered behind a cup on the window sill a hole in the cell window that was covered with a piece of plastic film. Under the blanket and mattress of Norvell's bunk, jail officers discovered two cell phones, one of which was the phone delivered by Joyce, and a cell phone charger. On one of the cell phones, officers found pictures of Norvell and West that had been taken inside their jail cell. On the second phone, officers found pictures of Joyce and another female.

During the search of Cell E–1, officers also discovered that a metal louver from a cell vent had been removed. The missing metal louver was found on the ground below Cell E–1. Officers also found an empty shampoo bottle with a string wrapped around it in Cell E–1. Norvell admitted to jail officials that the cell phones were his, but claimed that they were given to him by someone within the jail and were not brought to him by Joyce or anyone outside the jail.

On November 23, 2010, the State charged Norvell with two counts of trafficking with an inmate and further alleged him to be a habitual offender. A jury trial was held on February 23–24, 2011, at the conclusion of which Norvell was found guilty of Count I, trafficking with an inmate as a class C felony.[3] Norvell was subsequently sentenced to eight years imprisonment with such sentence to be served consecutive to the sentence imposed in another cause.

Norvell argues that the evidence is insufficient to support his conviction, asserting that the evidence cannot support a finding that he delivered the cell phone to himself as is required by the statute defining the offense. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind.2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind.2009).

The crime of trafficking with an inmate is defined by statute as follows: A person who, without the prior authorization of the person in charge of a penal facility, knowingly or intentionally delivers or carries

---

**3.** The State dismissed the second count of trafficking with an inmate prior to trial; the habitual offender allegation was dismissed by the State following trial.

into the penal facility with intent to deliver an article to an inmate of the facility, commits trafficking with an inmate, a class A misdemeanor. The offense is a class C felony if the article is a cellular telephone or other wireless or cellular communications device. *See* I.C. § 35–44–3–9(b)(1), (d)(3). The charging information provided in pertinent part as follows:

> [O]n or about September 5, 2010 in Delaware County, State of Indiana, Spencer Robert Norvell without the prior authorization of the person in charge of the Delaware County jail, a penal facility, did knowingly carry into said facility an article, to-wit: a cell phone and charger; with the intent to deliver said article to an inmate. . . .

*Appellant's Appendix* at 16.

■ The State argues on appeal that Norvell's conviction can be sustained under the theory of accomplice liability. During final instructions, the jury was instructed on accomplice liability without objection from Norvell. Under the theory of accomplice liability, one who aids or assists in a crime is equally as culpable as the one who commits the actual crime. Ind. Code Ann. § 35–41–2–4 (West, Westlaw current through 2011 1st Regular Sess.); *see also Hauk v. State*, 729 N.E.2d 994 (Ind.2000). There is no distinction between the criminal responsibility of a principal and that of an accomplice. *Hauk v. State*, 729 N.E.2d 994. The statute governing accomplice liability establishes it not as a separate crime, but as a separate basis of liability for the crime charged. *See* I.C. § 35–41–2–4; *Hampton v. State*, 719 N.E.2d 803 (Ind.1999). Norvell maintains that his conviction cannot stand up even under the theory of accomplice liability, arguing that his actions in providing money and arranging for delivery of the cell phone to the jail do not amount to aiding in delivery of an article to an inmate (i.e., himself).

■ Having reviewed the record, we agree with the State that Norvell's conviction for trafficking with an inmate is sustainable on grounds of accomplice liability.

In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such factors as: (1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime.

*Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002).

■ The State's evidence proved beyond a reasonable doubt that Norvell aided Joyce and West in their commission of trafficking with an inmate. Norvell arranged for Joyce to obtain money, purchase a cell phone, activate the phone, and then deliver it to the jail where he was incarcerated. Norvell also helped West break a hole in their cell window. Joyce testified that when she arrived at the jail, she saw Norvell and West in their cell window. Joyce further testified that West lowered the string out the window and then pulled it back up and through the cell window after she attached the cell phone/charger to it. Norvell testified that West gave him the cell phone and the charger and suggested that West "obviously" received those items through the hole in their cell window. *Transcript* at 244. Norvell admitted that the cell phone and charger were his and that once they were in his possession, he was the only person to use them.

This evidence demonstrates that West carried the cell phone in the jail facility with the intent to deliver it to another inmate, namely Norvell. Joyce's testimony confirmed that it was West who carried the phone into the jail. Norvell's own

testimony establishes that West delivered the phone to him and such is corroborated by the fact that the phone was found under the blankets and mattress of Norvell's bunk. Norvell was present when the cell phone was carried into his cell and did not oppose West's actions in carrying the cell phone into the jail. Norvell engaged in several overt acts to aid in the commission of the offense, e.g., he solicited Joyce to provide the phone, provided the money to purchase the phone, and provided instructions to Joyce on where to bring the phone. Norvell also helped break a hole in the cell window through which the phone was carried into the jail by West. Norvell accepted the cell phone from West and was the sole user of the phone. The jury was presented with evidence that West committed the elements of trafficking with an inmate. Norvell's actions clearly aided that criminal enterprise. That Norvell expected to benefit, and in fact did, from a criminal act in which he aided does not preclude his conviction for the offense. *See Hopper v. State*, 539 N.E.2d 944, 947 (Ind.1989) ("[a]ny evidence that the accomplice acted in concert with other persons who actually committed the acts constituting the elements of the crime is sufficient to support a conviction on the accessory theory").

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.