**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Apr 11 2012, 9:21 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| PATRICK DEWAYNE CARR, JR., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 71A05-1105-CR-261 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable R.W. Chamblee, Jr., Judge
Cause No. 71D08-0910-FB-127

April 11, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Patrick Dewayne Carr, Jr. ("Carr") appeals after a jury trial from his convictions for one count of robbery[1] as a Class B felony, one count of burglary[2] as a Class B felony, and one count of attempted murder[3] as a Class A felony. Carr presents the following issue for our review: whether there is sufficient evidence to support his convictions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 28, 2009, Shelby Taylor ("Shelby") made plans with Paige Shields ("Paige") to spend some time at Rowland "Roy" Mwaungulu's ("Roy") apartment in the Regency Royal ("Regency") apartment complex in Mishawaka, Indiana. Paige, who was seventeen years old, had recently met Roy, who was twenty-six years old but Shelby, who was eighteen years old, had never met him. Later in the evening, Paige picked up Shelby at her house. Two men were in the car. One of the men was Martel "Threat" Washington ("Threat"), who also went by the name Martel Coleman, and who was Paige's boyfriend. The other man was known as City. Paige dropped off the two men at another apartment complex before continuing to drive with Shelby to Roy's apartment.

When Paige and Shelby arrived at the Regency, Roy buzzed them in. Paige was in and out of Roy's apartment while on the phone with Threat because of "baby daddy drama." *Tr.* at 21. Paige left the main door, where Roy had buzzed in the two girls, ajar. Between

---

[1] *See* Ind. Code § 35-42-5-1.

[2] *See* Ind. Code § 35-43-2-1.

[3] *See* Ind. Code § 35-41-5-1 (attempt); Ind. Code § 35-42-1-1 (murder).

2

8:44 p.m. and midnight, Paige made fourteen outgoing texts or phone calls to Threat. At 9:34 p.m. and 10:04 p.m., she placed phone calls to Carr.

Paige left the apartment, but returned approximately fifteen minutes later. When she returned, she left the door to Roy's apartment cracked open, stating that she did that because she was waiting for a phone call. Three men wearing all black and armed with guns suddenly kicked in the door to Roy's apartment. The men started screaming "get on the ground, m*th*r f*ck*r." *Tr.* at 24. Shelby started to go to the floor, but Roy stood up and tried to run from the intruders. Roy saw Carr holding a gun. The men started shooting at Roy. Shelby saw Paige run out of the apartment and followed her. Roy ran down a hallway in his apartment to his bedroom and called 911. He hid in a closet there until police officers arrived.

Roy discovered that his keys to his apartment and car were missing. Police found spent .25 caliber and 9mm casings outside and inside Roy's apartment and saw bullet holes in the wall and in the door to the apartment. Approximately five minutes after running out of Roy's apartment, Shelby and Paige returned to Roy's apartment. Paige told the officers that she, too, was missing her car keys to her burgundy Oldsmobile. Based on that information, officers watched the vehicle to see if anyone would come and pick it up. Vanessa Leal ("Vanessa"), who was storing her belongings at the apartment of Threat's sister, Danielle, saw Threat earlier in the day at Danielle's apartment with a gun "tucked into his pants." *Id.* at 141. Vanessa left the apartment and returned later in the day. At that time, she saw Threat there and two of his friends. Vanessa identified Carr as one of the individuals she saw. She

said that each of them was wearing dark clothing and described their behavior as being in a hurry "looking out the window, whispering among themselves, just jittery." *Id*. at 144.

After the crimes had occurred, Vanessa gave Carr, Threat, and the other man, a ride to the Regency to find the keys to Threat's burgundy Oldsmobile. While at the Regency, Threat and Carr unsuccessfully searched for the car keys in the parking lot, while the third man remained in the car. Vanessa then drove the three men back to Danielle's apartment. Vanessa offered to walk to the Regency to search for the missing keys. She did so and successfully found the keys. Vanessa then started to drive Threat's car back to Danielle's apartment when officers pulled the vehicle over. She told the officers that she was driving Threat's car, that he and two other men were at Danielle's apartment, and gave them their location.

After obtaining a search warrant for Danielle's apartment, the SWAT team entered and found Carr in the bedroom and Threat and the other man in the bedroom closet. Officers recovered .38 caliber bullets and a loaded .25 caliber handgun. Roy's keys were found in a bush just outside the apartment.

Later that same evening, Roy identified Threat as one of the intruders from six in loose photographs. Threat was the only person involved in the break-in whose photograph was included in that array. Police officers also transported Paige and Shelby to the police station for questioning. The next day, Roy identified Carr from a set of two photo arrays.

The State charged Carr with one count of robbery as a Class B felony, one count of burglary as a Class B felony, and one count of attempted murder as a Class A felony. After a

4

jury trial, Carr was found guilty as charged. The trial court sentenced Carr to terms of ten years executed for each of the Class B felony convictions and to a term of thirty years, with twenty years executed and ten years suspended for the Class A felony conviction, each to be served concurrently, followed by a period of probation. Carr now appeals.

## DISCUSSION AND DECISION

### Sufficiency of the Evidence

Carr challenges the sufficiency of the evidence supporting his convictions. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind. Ct. App. 2009). We do not reweigh the evidence or reassess witness credibility. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Carr's attack on the sufficiency of the evidence for each of his convictions involves the identification testimony. He argues that without the identification component of each offense, there is insufficient evidence to support his convictions for each crime.

In particular, Carr challenges Roy's identification of him as one of the three men who broke into his apartment, took his keys, and fired shots at him. At trial, Roy testified that after he heard the sound from the door being kicked in, he looked up and saw three men. He identified Carr as the one he took a good look at, that Carr was standing by the door, and that Roy remembered what Carr's eyes looked like. Roy gave the police detailed information

5

about the crimes. He also selected Carr's photograph from a photo array and identified him in court as one of the intruders. At trial, Roy was questioned extensively about his ability to see the intruders, the length of time he saw them, and about his initial statements to police officers that he could not identify the intruders.

Vanessa testified that Carr was among the men who were at Danielle's apartment on the night of the crimes and to whom she gave a ride to the Regency in order to look for missing keys. Officers found Carr in Danielle's apartment in a bedroom, and Threat and another male were found hiding in the bedroom closet.

Carr had an expert witness testify about problems with eyewitness identification. That witness also testified about Department of Justice guidelines regarding the collection of eyewitness identification. Corporal Michael Dube ("Corporal Dube") of the Mishawaka Police Department had testified during the State's case that he transported Vanessa to the police station after he and another officer pulled her over while driving Threat's car. Vanessa told Corporal Dube that she was returning Threat's car to him and that he was at Danielle's apartment. The name she provided was Threat's given name, Martel. Corporal Dube relayed that information to another officer investigating the crimes, and that officer provided him with several photos, including Threat's photo, to show to Roy. Corporal Dube further testified that he had never conducted a photo lineup before, and that he was unfamiliar with Department of Justice Guidelines for such. He presented the photographs to Roy as a stack of photographs. Roy selected Threat's photograph from the stack of photos he was shown.

While the officer's lack of familiarity with Department of Justice Guidelines for conducting photo lineups is worrisome, we conclude that the identification evidence was sufficient nonetheless. Carr's attorney vigorously cross-examined the witnesses who identified Carr as one of the intruders and challenged their accounts of the crimes. Further, Carr's attorney presented expert testimony about the reliability of eyewitness identification and the testimony of an officer who asked Roy, Paige, and Shelby if they recognized any of the suspects. That officer testified that they indicated they did not recognize anyone. Carr presented evidence to the jury challenging the credibility of the witnesses and the accuracy of their identification of Carr as one of the intruders. Any challenges to the identification evidence would be a consideration for the jury in their assessment of the weight to be given to that testimony. On review, we do not reweigh the evidence or reassess witness credibility. *Mork* , 912 N.E.2d at 411. Here, the identification evidence, while not overwhelming, is sufficient to support the convictions.

Although Carr does not challenge the sufficiency of the evidence in any other regard than with respect to identification, we nonetheless address the sufficiency of the evidence supporting Carr's convictions. The State charged Carr as an accomplice. "Under the theory of accomplice liability, one who aids or assists in a crime is equally as culpable as the one who commits the actual crime." *Norvell v. State*, 960 N.E.2d 165, 168 (Ind. Ct. App. 2011). Accomplice liability is a separate basis of liability for the crime charged, but there is no distinction between the criminal responsibility of a principal and an accomplice. *Id.*

In order to establish beyond a reasonable doubt that Carr committed the offense of robbery as a Class B felony, the State was required to prove that Carr, while armed with a deadly weapon, knowingly or intentionally took property from Roy by using or threatening the use of force, or by putting Roy in fear. Ind. Code § 35-42-5-1. In order to establish beyond a reasonable doubt that Carr committed the offense of burglary as a Class B felony, the State was required to prove that Carr, while armed with a deadly weapon, broke and entered Roy's apartment with the intent to commit a felony therein. Ind. Code § 35-43-2-1. In order to establish beyond a reasonable doubt that Carr committed the offense of attempted murder, the State was required to prove that Carr, while armed with a deadly weapon, intentionally fired the weapon in a manner likely to cause death or serious injury. Ind. Code §§ 35-41-5-1; 35-42-1-1.

Here, the evidence most favorable to the jury's verdict established that Carr, City, and Threat, while armed with weapons, kicked in the door of Roy's apartment, fired shots at Roy, and took the keys to his car and his apartment. Therefore, there was sufficient evidence from which the jury could convict Carr of these offenses.

Affirmed.

BARNES, J., and BRADFORD, J., concur.