Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JEFFREY S. JACOB**
**CHRISTOPHER B. SERAK**
Jacob, Hammerle & Johnson
Zionsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSHUA D. HUFF, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 06A01-1208-CR-396 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Rebecca McClure, Judge
Cause No. 06D02-1205-FB-335

**March 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Joshua Huff ("Huff") was convicted in Boone Superior Court of Class B felony burglary and Class D felony theft and ordered to serve an aggregate fifteen-year sentence in the Department of Correction. Huff appeals his convictions and raises two issues, which we restate as:

I. Whether the evidence is sufficient to support Huff's burglary conviction; and,

II. Whether the trial court abused its discretion when it instructed the jury on accomplice liability.

Concluding that the trial court abused its discretion when it tendered erroneous accomplice liability instructions to the jury, but that the error was harmless and the evidence is sufficient to support his burglary conviction, we affirm.

**Facts and Procedural History**

Huff and his girlfriend, Cara Crane ("Crane"), are heroin addicts. On May 1, 2012, Huff and Crane discussed stealing items and pawning them to obtain funds to purchase heroin. Tr. p. 86. Crane told Huff that her aunt, Tammy Spidel ("Spidel") always left the door to her house unlocked. Crane then used Huff's cellphone to text Spidel to ask when Spidel would be home. Crane told her aunt that she wanted to use her hot tub. Spidel responded that she would not be home that evening until after 5:30 p.m.

Crane then called Dustin Pennington ("Pennington") and asked Pennington to take her to Spidel's home. Crane told Pennington that she wanted to see if her aunt left the door unlocked, and to steal items from the home. After Crane spoke to Pennington, she relayed the conversation to Huff. Pennington, accompanied by his girlfriend, Tanya

2

Ellsberry ("Ellsberry"), drove Ellsberry's vehicle to Crane's home and picked up Crane and Huff.

The foursome proceeded to Spidel's house as planned. Crane and Pennington walked around to the back of the residence while Huff and Ellsberry waited in the vehicle. The door to Spidel's home was locked, and Pennington broke the door down to gain access to the home. Pennington and Crane returned to the vehicle with several items stolen from Spidel's home, including a jar of change, two rings, and several watches.

Pennington then delivered Ellsberry to her place of employment. Next, Pennington, Crane, and Huff drove to a nearby Marsh grocery store. All three individuals entered the grocery store and used a Coinstar™ machine to obtain cash for the jar of coins totaling $95.40. They then proceeded to a store specializing in buying gold for cash. Pennington took the two rings into the store and sold them for $35. Pennington and Huff went into two pawn shops together to attempt to sell watches they stole from Spidel's residence but were only able to sell one watch.

Next, the threesome stopped at a pizza restaurant and purchased pizza. Pennington asked more than one customer if the customer would be interested in purchasing a watch. Huff also tried to sell one of the watches while there. Tr. p. 109. After unsuccessfully attempting to sell the watches, they drove to a nearby neighborhood. Pennington purchased several packages of heroin and divided the heroin between himself, Huff and Crane. Tr. p. 112. They then returned to Zionsville and picked up Ellsberry who had completed her shift at work. Thereafter, Pennington, Huff, Crane, and Ellsberry drove to a motel on Post Road where Pennington traded an iPod for heroin. Pennington

3

also divided that heroin between himself, Huff and Crane. Tr. p. 115. After Crane returned home, her mother confronted her about the burglary that had occurred at Spidel's house, and Crane admitted her involvement in the burglary.

On May 16, 2012, Huff was charged with Class B felony burglary and Class D felony theft. A two-day jury trial commenced on July 10, 2012. Before Huff's trial began, Crane and Ellsberry entered into plea agreements with the State, and they both testified at Huff's trial.

During discussion of the tendered final jury instructions, the trial court agreed to give Final Instructions 7, 8, and 9 over Huff's objection. Instructions 7 and 8 informed the jury of the definitions of "aiding, inducing, or causing" burglary and theft, and each instruction listed specific facts the State was required to prove for the jury to find Huff guilty of those offenses. See Appellant's App. pp. 120-21. Final Instruction 9 is a general accomplice liability instruction.

The jury found Huff guilty as charged. The trial court ordered Huff to serve an aggregate fifteen-year sentence in the Department of Correction. Huff now appeals. Additional facts will be provided as necessary.

## I. Sufficient Evidence

Huff argues that the evidence is insufficient to support his Class B felony burglary conviction.[1] Upon a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Chappell v. State, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005)), trans.

---

[1] Huff does not challenge the sufficiency of the evidence supporting his theft conviction.

4

denied. Rather, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. Baumgartner v. State, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

Indiana Code section 35-43-2-1 provides that "[a] person who breaks and enters the building or structure of another person, with the intent to commit a felony in it, commits burglary[.]." The offense is classified as a Class B felony if the building or structure is a dwelling. I.C. § 35-43-2-1(1). In this case, the State proceeded to trial on the theory of accomplice liability because it is undisputed that Huff did not break into and enter Spidel's home.

The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. Norvell v. State, 960 N.E.2d 165, 168 (Ind. Ct. App. 2011), trans. denied. Thus, an individual who aids another person in committing a crime is as guilty of the crime as the actual perpetrator. Specht v. State, 838 N.E.2d 1081, 1093 (Ind. Ct. App. 2005), trans. denied. In other words, "a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." Id.; see also Ind. Code § 35-41-2-4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense."). And an accomplice need not participate in each and every element of the crime in order to be convicted of it. Specht, 838 N.E.2d at 1092.

5

In determining whether a person aided another in the commission of a crime, a court should consider the following four factors: (1) the defendant's presence at the scene of the crime; (2) the defendant's companionship with another engaged in criminal activity; (3) the defendant's failure to oppose the crime; and (4) the defendant's conduct before, during, and after the occurrence of the crime. Vandivier v. State, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005) (citing Garland v. State, 788 N.E.2d 425, 431 (Ind. 2003)), trans. denied. Although the defendant's mere presence during the commission of the crime or his failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. Id. "Mere tangential involvement in the crime can be sufficient to convict a person as an accomplice." Berry v. State, 819 N.E.2d 443, 450 (Ind. Ct. App. 2004), trans. denied.

Huff argues that the State was required, but failed to prove, that he "undertook some affirmative conduct intended to aid or facilitate the physical act of burglary." Appellant's Br. at 6. In support of his argument, Huff cites to several cases affirming burglary convictions on a theory of accomplice liability where the Appellant-Defendant acted as a lookout, transported accomplices to and/or from the crime scene, carried stolen items from the dwelling, or provided items used in the burglary. See id. at 6-7.

Huff's insistence that he did not actively participate in the actual breaking and entering of Spidel's house is accurate. However, on the day of the burglary, Huff and Crane discussed stealing items to pawn to obtain money to purchase heroin. Tr. p. 86. Crane told Huff that Spidel would not be at home and that her door was always unlocked.

6

Crane then used Huff's cellphone to determine whether Spidel was at home and to call Pennington to arrange transportation to Spidel's house.

Huff accompanied Crane and Pennington to Spidel's house and remained in the vehicle while Crane and Pennington broke and entered the house. After Crane and Pennington returned the vehicle with items stolen from Spidel's house, Huff and Pennington had a discussion with Crane "about how they couldn't get in any more trouble and caught for this[.]" Tr. p. 98.

When Huff saw the jar of change that Pennington stole from Spidel, he asked Crane and Pennington how much money they thought was in the jar. The threesome then went into a Marsh grocery store and cashed in the change using the store's Coinstar™ machine. They then all returned to the vehicle and proceeded to a store that specializes in buying gold for cash where Pennington sold the rings taken from Spidel's house.

Next, Pennington drove to a pawn shop. Huff and Pennington both went into the pawn shop to attempt to pawn the stolen watches. They were unsuccessful at the first pawn shop, but the second pawn shop purchased a watch. Both Huff and Pennington went into second pawn shop.

The threesome went to a Little Caesar's pizza store where they purchased pizza and attempted to sell the remaining watches to customers. Huff unsuccessfully attempted to sell one of the watches. Tr. p. 109. Pennington then used the money obtained from the sale of the stolen items to purchase heroin, which he divided between himself, Crane, and Huff.

This evidence is sufficient to convict Huff of burglary under the theory of accomplice liability. Huff knew of Crane's plan to burglarize her aunt's home, accompanied her to Spidel's house, was present at the scene of the crime, and aided Crane and Pennington in acquiring cash for the stolen items. Huff did so with the intent of obtaining money to purchase heroin. Huff's argument to the contrary is merely an invitation to reweigh the evidence and the credibility of the witnesses, which our court will not do.

## II. Jury Instructions

Huff next argues that the trial court abused its discretion when it instructed the jury on accomplice liability. In reviewing this claim, we are mindful that the manner of instructing the jury is left to the sound discretion of the trial court. Rogers v. State, 897 N.E.2d 955, 962 (Ind. Ct. App. 2008), trans. denied. We will not reverse the trial court's ruling unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. Id. Jury instructions must be considered as a whole and in reference to each other. Id. An erroneous instruction will not constitute reversible error if the instructions, taken as a whole, do not misstate the law or otherwise mislead the jury. Id.

In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other given instructions. Id. Finally, "errors in the giving or refusing of instructions are harmless where a conviction is clearly

8

sustained by the evidence and the jury could not properly have found otherwise."

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008).

The challenged instructions provide as follows:

Final Instruction # 7

Aiding, inducing, or causing Burglary is defined by statute as follows: A person who, knowingly, or intentionally, aids, induces, or causes another person to commit an offense commits that offense. A person may be convicted of aiding, inducing, or causing Burglary even if the other person has not been prosecuted for the burglary, has not been convicted of the burglary, or has been acquitted of the burglary.

Before you may convict the Defendant, the State must have prove each of the following elements beyond a reasonable doubt:

    1. The Defendant, Joshua D. Huff
    2. knowingly or intentionally
    3. aided, induced, or caused
    4. Dustin Pennington and/or Cara Crane to commit the offense of Burglary, defined as
        a. Dustin Pennington and/or Cara Crane
        b. Knowingly or intentionally
        c. Breaking and entering
        d. Into the dwelling of another person, Tammy Spidel
        e. With the intent to commit a felony, Theft, in it, by exerting unauthorized control over the property of another person, with the intent to deprive said person of any part of the use or value of the property.
    5. by allowing Cara Crane to use his cell phone; by going with Dustin and/or Cara to the residence of Tammy Spidel for the purposes of Cara and/or Dustin acquiring property without permission to sell or pawn; sitting in the vehicle while Dustin and or Cara entered into the residence of Tammy Spidel; discussing how much money could be received from items stolen; going with Dustin and/or Cara to various locations to get money for the items stolen; attempting to sell the items that were stolen; not reporting this incident to law enforcement; denying he was ever at the scene of the burglary; receiving heroin from the sale of the items stolen.

If the State failed to prove each of the elements, beyond a reasonable doubt, you must find the Defendant not guilty of aiding, inducing, or causing Burglary, a Class B felony, charged in Count I.

Final Instruction # 8

Aiding, inducing, or causing Theft is defined by statute as follows: A person who, knowingly, or intentionally, aids, induces, or causes another person to commit an offense commits that offense. A person may be convicted of aiding, inducing, or causing theft even if the other person has not been prosecuted for the theft, has not been convicted of the theft, or has been acquitted of the theft.

Before you may convict the Defendant, the State must have prove each of the following elements beyond a reasonable doubt:

    1. The Defendant, Joshua D. Huff
    2. knowingly or intentionally
    3. aided, induced, or caused
    4. Dustin Pennington and/or Cara Crane to commit the offense of Theft, defined as
        a. Dustin Pennington and/or Cara Crane
        b. Knowingly or intentionally
        c. exerted unauthorized control over the property of another person, Tammy Spidel,
        d. with the intent to deprive the other person of any part of its value or use
    5. by allowing Cara Crane to use his cell phone; by going with Dustin and/or Cara to the residence of Tammy Spidel for the purposes of Cara and/or Dustin acquiring property without permission to sell or pawn; sitting in the vehicle while Dustin and or Cara entered into the residence of Tammy Spidel; discussing how much money could be received from items stolen; going with Dustin and/or Cara to various locations to get money for the items stolen; attempting to sell the items that were stolen; not reporting this incident to law enforcement; denying he was ever at the scene of the burglary; receiving heroin from the sale of the items stolen.

If the State failed to prove each of these elements, beyond a reasonable doubt, you must find the Defendant not guilty of aiding, inducing, or causing Theft, a Class D felony, charged in Count II.

10

> A person may be convicted upon evidence that he aided in the commission of a crime, it is not necessary that the evidence show that the defendant participated personally in the commission of each element of the crime. The trier of fact may infer an accomplice's participation in a crime from several factors considered together, including presence, failure to oppose the crime, companionship with a principal, and conduct, before, during, and after the offense which tends to show complicity.

Appellant's App. pp. 120-22.

Huff argues that these instructions are improper because "they are [r]epetitive, [a]rgumentative and [s]lanted in [f]avor of [p]roving the State's [c]ase for [c]onviction." Appellant's Br. at 9. Although Huff concedes that tendering jury instructions on accomplice liability was supported by the evidence and the instructions correctly state the law, he contends that

> the instructions present a reversible error because they do not include potentially exculpatory elements governing case law and because they misrepresent facts in a manner that creates a misleading perception to a jury of how the law relates to the evidence presented.

Id. at 13.

Huff correctly observes that mere presence at the crime scene or a defendant's failure to oppose the crime is insufficient proof to support a conviction. See Rohr v. State, 866 N.E.2d 242, 248-49 (Ind. 2007); Vandivier, 822 N.E.2d at 1054. The jury must be instructed that accomplice liability requires proof that the defendant engaged in voluntary conduct in concert with his accomplice. Boney v. State, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008), trans. denied. "[B]ut presence at the scene coupled with other circumstances

11

tending to show participation in the crime may be sufficient to sustain a guilty verdict." Rohr, 866 N.E.2d at 249.

In this case, the trial court's instructions, when considered as a whole and in reference to each other, do not mislead the jury to believe that the State could meet its burden of proof simply by presenting evidence of Huff's presence during commission of the offense and his failure to oppose the crime. Moreover, it was certainly not error for the trial court to instruct the jury that it could consider Huff's presence and failure to oppose the crime together with the other factors listed in Instruction No. 9. See e.g. Townsend v. State, 934 N.E.2d 118, 129-30 (Ind. Ct. App. 2010), trans. denied.

However, we also observe that our courts "have 'long disapproved' instructions that unduly 'emphasize one particular evidentiary fact, witness, or phase of the case.'" Fowler v. State, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009) (quoting Ham v. State, 826 N.E.2d 640, 641-42 (Ind. 2005)). "'An instruction as to what evidence warrants an inference of guilty clearly invades the jury's province.'" Id. (quoting Crawford v. State, 550 N.E.2d 759, 761 (Ind. 1990)).

In Marks v. State, 864 N.E.2d 408 (Ind. Ct. App. 2007), our court concluded that the quoted instruction below unnecessarily emphasized certain evidence and invited the jury "'to violate its obligation to consider all the evidence.'" Id. at 411-12 (quoting Ludy v. State, 784 N.E.2d 459, 462 (Ind. 2003)).

Evidence of the following can establish impairment:
(1) the consumption of significant amounts of alcohol;
(2) impaired attention and reflexes;
(3) watery or bloodshot eyes;
(4) the odor of alcoholic beverage on the breath;

12

(5) unsteady balance;
(6) failure of field sobriety tests;
(7) slurred speech

Id. at 410 (record citation omitted). See also Ham, 826 N.E.2d at 641 (holding that the trial court erred when it instructed the jury that a defendant's "refusal to submit to a chemical test may be considered as evidence of intoxication"); Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (holding that the trial court erred when it instructed the jury that the defendant's flight after the commission of a crime, although not proof of guilt, may be considered as evidence of consciousness of guilt); Cox v. State, 512 N.E.2d 1099, 1101 (stating that "no instruction should single out certain portions of evidence").

In this case, Instructions Nos. 7 and 8 certainly emphasize certain evidence and focus the jury's attention on that evidence, which violates the jury's obligation to consider all the evidence. See Marks, 864 N.E.2d at 412. However, we will "disregard any error that does not effect the substantial rights of a party." Id. (citations omitted). "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict." Id.

As we discussed above, the evidence is more than sufficient to sustain Huff's conviction for burglary under a theory of accomplice liability. For this reason, we conclude that the instructions would not likely have impacted the jury's verdict, and that tendering the erroneous instructions to the jury was harmless error.

13

**Conclusion**

The trial court abused its discretion when it tendered Jury Instructions Nos. 7 and 8 to the jury. However, the evidence is more than sufficient to sustain Huff's Class B felony burglary conviction and the error in the instructions would not likely have impacted the jury's verdict. For these reasons, tendering the erroneous instructions to the jury was harmless error. We therefore affirm Huff's Class B felony burglary conviction.

Affirmed.

CRONE, J., and BRADFORD, J., concur.