## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 08 2015, 10:41 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony C. Martin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 8, 2015<br><br>Court of Appeals Case No.<br>02A03-1407-CR-243<br><br>Appeal from the<br>Allen Superior Court<br><br>The Honorable Frances C. Gull,<br>Judge<br><br>Cause No. 02D05-1307-FB-131 |

**Kirsch, Judge.**

Anthony C. Martin was convicted after a jury trial of robbery[1] as a Class B felony and resisting law enforcement[2] as a Class D felony and found to be a habitual offender.[3] He was sentenced to an aggregate term of fifty years executed. Martin appeals and raises the following restated issues for our review:

> I. Whether the State presented sufficient evidence to support his conviction for Class B felony robbery; and
>
> II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

Around 12:45 a.m. on July 23, 2013, Tyler Zoda, Devon Stewart, and Cory Clemmer were sitting in the back of their truck eating pizza in the parking lot of Papa John's Pizza near State Street and Maplecrest Road in Fort Wayne, Indiana. Zoda walked over to the Shell gas station and convenience store ("Shell station") at 6321 East State Street, which was located next door to the parking lot, to buy something to drink. After Zoda left, Stewart and Clemmer saw what they believed to be a red Ford Explorer driving quickly past. The vehicle was loud, and Stewart and Clemmer observed it drive past them several

---

[1] *See* Ind. Code § 35-42-5-1. We note that, effective July 1, 2014, a new version of the criminal statutes at issue in this case were enacted. Because Martin committed his crimes prior to July 1, 2014, we will apply the statutes in effect at the time he committed his crimes.

[2] *See* Ind. Code § 35-44.1-3-1.

[3] *See* Ind. Code § 35-50-2-8.

times and circle the Shell station. On their last observation of the Explorer, Stewart and Clemmer saw it near the car wash located behind the Shell station, driving rapidly away. As they watched, the Explorer hit a bump, causing the car wash door to open, and drove away from the area of Maplecrest Road.

[4] At approximately the same time that night, a man, later identified as Frederick Freeman, entered the Shell station, wearing a dark hat, a white covering over his lower face, a dark shirt, and gloves, and pointed a silver handgun at the clerk, Dalvir Singh. Freeman told Singh to give him the money, and Singh opened the cash register, pulled out the money tray, containing approximately $300, and placed it on the counter. Freeman took the money tray, exited the Shell station, turned left, and ran toward Maplecrest Road.

[5] While the robbery was occurring, Justin Douglas and some friends drove up to a gas pump outside the Shell station, and Douglas exited the car. As he approached the Shell station, he observed the robbery in progress. Freeman pointed the handgun at Douglas and told him to leave. Douglas went back to the car and told the driver to leave. As they drove away, Douglas called the police, reported the robbery, and gave a description of Freeman and the direction he traveled. Zoda, who was inside the shell station at the time of the robbery, also called 911 immediately after Freeman left.

[6] At approximately 12:50 a.m., officers from the Fort Wayne Police Department heard the dispatch regarding the armed robbery and responded to the Shell station. They spoke with the witnesses and viewed the surveillance video of the

robbery. The surveillance video showed that Freeman came from the area of the car wash when he entered the Shell station, and when he left, he went back toward the car wash area. The officer radioed a description of Freeman, his direction of travel, and a description of the vehicle involved to other officers in the area.

[7] Fort Wayne Police Department Officer Robert Hollo ("Officer Hollo") was patrolling in the area of State Street and Coliseum Boulevard at around 12:50 a.m. in an unmarked vehicle when he received the radio broadcast of the robbery at the Shell station and heard that a red Ford Explorer had been observed circling the Shell station and was most likely the suspect vehicle. At 1:01 a.m., Officer Hollo was at the intersection of Lake Avenue and Coliseum Boulevard and saw a red Ford Explorer matching the description of the vehicle involved in the robbery turning in front of him southbound on Coliseum Boulevard. Officer Hollo radioed dispatch and informed them of the license plate number of the Ford Explorer. Officer Hollo then began to follow the Explorer southbound on Coliseum Boulevard. As he did so, the Explorer began driving erratically, accelerating, weaving in and out of lanes, and passing traffic.

[8] Officer Angie Reed arrived to assist Officer Hollo in a fully marked patrol vehicle and followed Officer Hollo's vehicle. At that time, Officer Hollo activated his vehicle's overhead lights to initiate a traffic stop of the Explorer. The Explorer made an immediate turn onto Reynolds Street at a high rate of speed, ignoring Officer Hollo's attempt to stop it, and accelerated. Officer

Hollo followed and activated his siren while pursuing the Explorer. The pursuit continued, reaching speeds of seventy to seventy-five miles per hour and lasted about two minutes, ending at Anthony Boulevard and Hayden Street, where the Explorer turned into a parking lot. As soon as the Explorer reached the parking lot, Freeman, who was the front seat passenger, attempted to exit the Explorer while it was still moving. Freeman was stuck in the seatbelt, and his foot dragged on the pavement, which caused his shoe and sock to come off. Freeman eventually freed himself, exited the Explorer, and fled on foot westbound toward Lillie Street. Officer Hollo radioed to other officers Freeman's description and his direction of flight and stayed with the Explorer until other officers arrived. Officer Hollo ordered the driver, who was later identified as Martin, to exit the Explorer. Martin initially did not comply with the order, but eventually did so. When he did exit the Explorer, Martin was holding an object that he refused to drop, and he refused to comply with any other orders given by Officer Hollo. When Officer Hollo threatened to tase Martin and pulled his Taser from his belt, Martin dropped the object he was holding, which was later discovered to be a cell phone, and fled in the same direction as Freeman had. Martin was apprehended when he fell in the yard of a house. Freeman was subsequently discovered in a bush in front of a house on Lillie Street. Both men were taken in to custody.

[9] The police recovered $198 in cash and a striped shirt where Freeman had been hiding in the bush. Inside the Explorer, the police found two black baseball caps, two pairs of gloves, and a dark colored sweatshirt. They also recovered a

black cell phone on the front passenger seat and a cell phone lying on the ground outside the driver's door. Zoda and Singh were transported to the scene of the arrest; Zoda was unable to identify either Freeman or Martin, and Singh positively identified Freeman as the man who robbed the Shell station. The cell phones recovered from the scene were forensically examined, and it was discovered that there were twelve telephone calls and ten text messages between the two cell phones in the four days prior to the robbery. A text message between the phones on July 20, 2013 referred to a "lick," which is common street slang for a robbery. *Tr.* at 429.

[10] The State charged Martin with Class B felony robbery and Class D felony resisting law enforcement and alleged that he was a habitual offender. A bifurcated jury trial was held; in the first phase, the jury found Martin guilty of both robbery and resisting law enforcement, and in the second phase, Martin was found to be a habitual offender. The trial court sentenced him to twenty years for Class B felony robbery, enhanced by thirty years for the habitual offender finding, and three years for Class D felony resisting law enforcement, which was ordered to be served concurrently to the other sentence for an aggregate sentence of fifty years executed. Martin now appeals.

## Discussion and Decision

## I. Sufficient Evidence

[11] The deferential standard of review for sufficiency claims is well settled. This court will neither reweigh the evidence nor assess the credibility of witnesses.

*Tooley v. State*, 911 N.E.2d 721, 724 (Ind. Ct. App. 2009), *trans. denied*; *Elisea v. State*, 777 N.E.2d 46, 48 (Ind. Ct. App. 2002). Rather, we will consider only the evidence and reasonable inferences most favorable to the trial court's ruling. *Elisea*, 777 N.E.2d at 48. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Tooley*, 911 N.E.2d at 724-25. Thus, if there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Trimble v. State*, 848 N.E.2d 278, 279 (Ind. 2006).

[12] Martin argues that the State failed to present sufficient evidence to support his conviction for Class B felony robbery. He specifically contends that the evidence did not support the conclusion that the Explorer stopped by the police was the same vehicle at the Shell station after the robbery because the vehicle that left the Shell station was not followed or observed throughout its exit path and the duration between the robbery and the vehicle pursuit of eleven minutes does not support that the Explorer was the same vehicle seen leaving the Shell station. Martin also claims that there was not even any evidence that the robber left the Shell station in a vehicle, so it was just speculation that the Explorer was the getaway vehicle. Martin further asserts that the lack of evidence found in the Explorer after the stop, particularly the absence of the cash tray, white handkerchief, and gun, demonstrates that the evidence presented was insufficient. Finally, he alleges that it was unclear how the witnesses were able to identify the robber since his face was covered, and therefore, such identifications were unreliable.

[13] The State charged Martin with Class B felony robbery for acting as an accomplice to Freeman when he committed the robbery at the Shell station. Robbery is defined as: "[a] person who knowingly or intentionally takes property from another person or from the presence of another person . . . by using or threatening the use of force on any person; or . . . by putting any person in fear. Ind. Code § 35-42-5-1. The crime is a Class B felony if it committed while armed with a deadly weapon. I.C. § 35-42-5-1. "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Ind. Code § 35-41-2-4. Accomplice liability is not established as a separate crime, but merely a separate basis of liability for the crime charged. *Hampton v. State,* 719 N.E.2d 803, 807 (Ind. 1999) (citing Ind. Code § 35-41-2-4). To be convicted of a crime under the theory of accomplice liability, it is not necessary that the defendant participate in every element of that crime. *Ransom v. State,* 850 N.E.2d 491, 496 (Ind. Ct. App. 2006). In determining whether a person aided or was an accomplice to another in the commission of a crime, our Supreme Court has long considered the following four factors: "(1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime." *Norvell v. State*, 960 N.E.2d 165, 168 (Ind. Ct. App. 2011), *trans. denied*.

[14] The evidence presented at trial showed that, between 12:45 and 12:50 a.m. on July 23, 2013, Freeman robbed the Shell station while armed with a handgun.

The surveillance video showed that he was wearing a dark hat, a white handkerchief covering his lower face, a dark shirt, and gloves. Immediately after Freeman left the Shell station, the robbery was reported to the police. A red Explorer was seen circling the Shell station prior to the robbery and was observed rapidly leaving the area and setting off the automatic door of the car wash. At about 12:50 a.m., information regarding the robbery and identifying the Explorer as the suspect vehicle was radioed to police officers in the area. Within ten minutes of the dispatch and fifteen minutes of the robbery, Officer Hollo observed a red Explorer coming from the direction of State Street and Maplecrest Road, where the Shell station was located. When Officer Hollo attempted to stop the Explorer, it began to flee as a high rate of speed and began a pursuit that reached speeds of up to seventy to seventy-five miles per hour. After the police were able to get the Explorer to stop, Freeman fled on foot, as did the driver, Martin. Both Freeman and Martin were caught, and Freeman was positively identified as the robber by Singh. Clothing similar to what the robber was wearing in the surveillance video was recovered from inside the Explorer, and close to $200 was found near Freeman when he was apprehended.

[15] Based on this evidence, the jury could reasonably conclude that Martin drove Freeman to the Shell station in the Explorer, waited in the vehicle while Freeman committed the robbery, and then fled the area with Freeman after the crime was committed. Martin and Freeman were discovered together a short time after the crime was committed, and evidence of Martin driving Freeman

around both before and after the robbery shows that Martin did not oppose the crime. Additionally, Martin's conduct after the crime supports his liability as an accomplice to Freeman. When the police attempted to stop the Explorer, Martin led them on a high speed chase, and even after the Explorer was stopped, Martin continued to flee on foot. Evidence of flight may be considered as circumstantial evidence of consciousness of guilt. *Clark v. State*, 6 N.E.3d 992, 999 (Ind. Ct. App. 2014). We, therefore, conclude that sufficient evidence was presented to support Martin's conviction for Class B felony robbery as an accomplice. Martin's arguments to the contrary are all requests for this court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Tooley*, 911 N.E.2d at 724.

## II. Inappropriate Sentence

Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[17] Martin argues that his maximum sentence is inappropriate in light of the nature of the offense and the character of the offender. He asserts that maximum sentences should be reserved for the worst offenses and offenders. He contends that his lack of prior violent offenses in his criminal history demonstrate that he did not merit a maximum sentence and his lack of recent criminal offenses show that he is not such a danger to society that he should receive a maximum sentence. Martin also claims that his offense was a typical robbery and did not warrant such a lengthy sentence.

[18] Martin was found guilty of Class B felony robbery, which subjected him to imprisonment for a fixed term between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. He was also found to be a habitual offender, which sentence can be no less than the advisory sentence for the underlying offense, nor more than the three times the advisory sentence for the underlying offense, and cannot exceed thirty years. Ind. Code § 35-50-2-8(h). Martin was also found guilty of Class D felony resisting law enforcement, which subjected him to imprisonment for a fixed term of between six months and three years, with an advisory sentence of one and a half years. Ind. Code § 35-50-2-7. The trial court sentenced Martin to twenty years for his robbery conviction, enhanced by thirty years for the habitual offender finding, and three years for the resisting law enforcement conviction, which was order to be served concurrently, for a total sentence of fifty years. The trial court's sentence was entirely within the range allowed by statute.

[19]     As to the nature of the offense, the evidence established that Martin was an accomplice in the armed robbery of the Shell station. Martin drove Freeman to the Shell station, waited in the vehicle while Freeman committed the robbery, and then drove Freeman away from the Shell station. Under Indiana Code section 35-41-2-4, as an accomplice, Martin was equally as culpable as Freeman in the commission of the crime. The robbery involved the use of a firearm, and Freeman pointed the hand gun at the store clerk and the customer that were present in the Shell station and threatened them. Further, during the commission of the offense, Martin fled from the police when they attempted to stop the Explorer and led the police on a high speed chase through the streets of Fort Wayne that reached speeds of seventy to seventy-five miles per hour. This flight from the police endangered other people and demonstrated a disregard for the safety of others.

[20]     As to the character of the offender, Martin has an extensive criminal history that began in 1993 when he was a juvenile and continued to the present. Martin has four juvenile adjudications, and as an adult, he has seven misdemeanor convictions and three felony convictions. His felony convictions were for Class D felony receiving stolen property, Class C felony carrying a handgun without a license, and possession of a firearm by a convicted felon, which was a federal felony conviction. Martin had his probation revoked twice and was out on bond for pending charges of Class B felony rape, Class B felony criminal deviate conduct and being a habitual offender at the time he committed the present offenses. We conclude that, based on the nature of the

offense and the character of the offender, Martin's sentence was not inappropriate.

[21]     Affirmed.

Friedlander, J., and Crone, J., concur.